UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 14-10363-RGS

UNITED STATES OF AMERICA

v.

BARRY J. CADDEN

MEMORANDUM AND ORDER
ON GOVERNMENT'S MOTION IN LIMINE TO ADMIT VICTIM
EVIDENCE THROUGH SUMMARY WITNESS [Dkt #933]

February 26, 2017

STEARNS, D.J.

The motion is ALLOWED, in part. The government seeks to admit through Dr. Ann Burgess, a doctor of nursing contracted by the government as an expert medical assistant, to present autopsy records and death certificates confirming the cause of death of the remaining seventeen alleged murder victims in the case as a means of expediting this prolonged trial (now about to enter its third month).[1] The issue of cause of death is one that, as

---

[1] The government also seeks to admit a photograph of each of the victims, something the court has previously sanctioned as means of "tell[ing] the jury 'something of the person whose life [has] been lost in order to humanize the proceedings.'" *Commonwealth v. Martinez*, 476 Mass. 186, 193 (2017), *quoting Commonwealth v. Holliday*, 450 Mass. 794, 816 (2008). Defendant misstates the court's February 5, 2017 Order excluding further victim-impact testimony as unduly prejudicial. What the court excluded was further victim life-story testimony by family members. It did not revise its orders permitting the government to offer evidence proving the cause of death of each of the named victims by way of autopsy reports and death

the government notes, has been uncontested by the defendant from the outset of the case. For decidedly unconvincing reasons, the defendant opposes the motion to allow Dr. Burgess to testify in summary fashion as to the records of death. The government also seeks to present a summary chart showing the medical facilities where patients who (according to the Centers for Disease Control tabulation) contracted both lethal and non-lethal forms of fungal meningitis were injected with vials from the three allegedly contaminated lots of methylprednisolone acetate shipped by New England Compounding Company (NECC). This raises an issue of more serious concern.

It may be useful to begin with some basic evidentiary principles. It has long been the practice in state and federal courts that a witness familiar with the underlying documents may present complex records that cannot be conveniently examined in court in a summary form (typically by way of a chart). *See* Fed. R. Evid § 1006; *United States v. Bray*, 139 F.3d 1104, 1113 (6th Cir. 1998) (charts summarizing daily stamp transactions between two postal clerks engaged in an embezzlement scheme); *State v. Lord*, 822 P.2d

---

certificates (which as the government correctly notes are business and/or public records that do not raise Confrontation Clause concerns). Nor did it revise its Order permitting the introduction of a photograph of each of the victims.

177, 193-196 (Wash. 1991) (charts summarizing complex forensic evidence in a rape murder trial); *United States v. Alicea-Cardoza*, 132 F.3d 1, 4 (1st Cir. 1997) (tabular listing of drug suspect's pager messages); *United States v. Symonevich*, 688 F.3d 12, 22-23 (1st Cir. 2012) (charts comparing defendant's heroin purchases with those of the other 127 customers of a drug ring, offered to rebut any inference of personal use). Summaries of complex testimony are also admissible. *See Commonwealth v. Guy*, 454 Mass. 440, 446 & n.5 (2009) (notebooks summarizing complicated DNA testimony). *Cf. United States v. Johnson*, 54 F.3d 1150, 1157-1161 (4th Cir. 1995) (summary testimony and charts admitted in a complex drug trial as a permissible "pedagogical device" under Fed. R. Evid. 611(a)); *State v. Olson*, 579 N.W.2d 802, 806 (Wis. App. 1998) (same, "check-off list" summarizing testimony of victims in a complex child molestation case).

By its own terms, Rule 1006 does not require that the underlying evidence be actually admitted at trial, although the court may require the proponent to show that the evidence is admissible and accurately summarized in the chart. *United States v. Milkiewicz*, 470 F.3d 390, 396 (1st Cir. 2006).[2] *Compare Commonwealth v. Wood*, 90 Mass. App. Ct. 271,

---

[2] By the same token, a summary chart is not rendered inadmissible by the fact that the underlying documents have been admitted, in whole or in part, in evidence. *Id.* at 396.

3

279-280 (2016) (error to admit a composite PowerPoint organized less as a summary of the underlying exhibits than as a selective tableau imposing the Commonwealth's gloss on the evidence). While a Rule 1006 chart is typically admitted in evidence, a Rule 611(a) pedagogical device distilling and simplifying complex data to aid counsel's argument to the court or jury usually is not. *Milkiewicz*, 470 F.3d at 397. The difference, as explained in *Bray,* 139 F.3d at 1111, is that charts admitted under Rule 1006 are explicitly intended to reflect the contents of the documents they summarize and typically are substitutes in evidence for the voluminous originals. Rule 611(a) pedagogical aids, on the other hand, are intended to illustrate or clarify a party's position and may permissibly by captions or method of organization promote the inferences and conclusions the proponent seeks to draw from the evidence.

Also pertinent is the command of the Federal Rules of Evidence that its provisions are to "be construed so as to . . . eliminate unjustifiable expense and delay." Fed. R. Evid. 102. Specifically, the court has the power to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time," Fed. R. Evid. 611(a)(2), and to exclude even relevant evidence on the basis of wasted time or the needless presentation of cumulative evidence, Fed. R. Evid. 403.

As earlier indicated, there is no good reason to refuse permission to the government to expedite the trial by allowing Dr. Burgess to give summary testimony as to the cause of death of the remaining seventeen victims. The Summary of Shipments Chart (Exhibit A attached to the government's motion) is more problematic. As also indicated, and as the government implicitly admits, Exhibit A falls more on the Rule 611 side of the spectrum than that of Rule 1006.[3] To the extent that the Chart in its first nine columns identifies clinics that ordered methylprednisolone acetate from NECC, specifies the date of the order, the quantity, the price, the date of the shipment, and the lot number assigned by NECC – all of which are based on NECC's own business records – the chart falls well within the ambit of Rule 1006 and would be admissible on the proffered testimony of Special Agent Ridgely. The problem lies with column 10, which purports to identify by name patients who were allegedly injected with methylprednisolone acetate from one of the three lots and who contracted fungal meningitis as a result. Evidence supporting this conclusion could not be based on any records of NECC, but necessarily on those of the clinics involved, and as defendant

---

[3] As the government states on page 5 of its supporting memorandum, the chart is intended to prove that all three of the suspect lots of methylprednisolone acetate were contaminated, a point that the government admits is "heavily disputed by the defense."

fairly notes, the "presumptive diagnosis" of the Centers for Disease Control (CDC).

## ORDER

For the foregoing reasons, the motion to admit the summary cause-of-death testimony of Dr. Burgess is <u>ALLOWED</u>. The motion to admit the Summary of Shipments Chart is <u>ALLOWED</u> in part and <u>DENIED</u> in part as indicated in the above Memorandum.[4]

        SO ORDERED.

        /s/ Richard G. Stearns
        _____
        UNITED STATES DISTRICT JUDGE

---

[4] The court is not ruling at this time on whether the government might be permitted in final argument to rely on the Summary of Shipments Chart to suggest a correlation between the shipments of the suspect lots and the CDC's observations of the timing and locations of outbreaks of clusters of fungal meningitis. Given the short notice of this dispute, the court has not had the opportunity to review the record to determine if there is support for a quantitative (as opposed to qualitative) argument in this regard.