366UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 14-CR-10363-RGS

UNITED STATES OF AMERICA

v.

BARRY J. CADDEN

**Instructions to the Jury**

March 16, 2017

Members of the Jury:

Now that you have heard the evidence in the case and the closing arguments of the lawyers, the time has come for me to instruct you on the law. My instructions will be in four parts; first, some instructions on the general rules that define the duties of the jury in a criminal case; second, a brief review of what is and what is not evidence in a criminal trial, together with some guidelines that may assist you in evaluating the evidence that has been presented; third, I will give instructions defining the elements, or components, of the crimes charged; and finally, I will explain the rules that will guide the conduct of your deliberations.

In defining the duties of the jury, let me first remind you of the general rules. It is your duty to find the facts from all of the evidence in the case. To the facts as you find them, you must apply the law as I will explain it to you.

You must follow the law as I describe it, whether you personally agree with the wisdom of the law or not.  You must do your duty as jurors regardless of any personal likes or dislikes, opinions, prejudices, or appeals to sympathy. That means that you must decide the case based solely on the evidence that is before you.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  And you must not read into these instructions, or into anything that I may have said or done during the course of the trial, any suggestion from me as to the verdict you should return – that is a matter entirely up to you.  Even if I were to have an opinion as to what your verdict should be, my opinion would be utterly irrelevant.  The verdict is yours, and yours alone, to render as the sole judges of the facts.

At the beginning of the case, I explained some important rules that govern criminal trials. I will restate them for you now in more detail.  There are three basic rules.

The first rule is that a defendant is presumed innocent unless and until proven guilty, and this presumption alone is sufficient to acquit him.  The Indictment brought by the United States against Mr. Cadden is an accusation, and only that; it is not proof of anything at all.  A defendant is

innocent in the eyes of the law, unless and until you, as the jury, decide, unanimously, that the government has proved his guilt beyond a reasonable doubt.

That brings me to the second rule.  In a criminal case, the burden of proving guilt is on the government.  It carries that burden throughout the trial.  A defendant never has the burden of proving his innocence.  The right of a defendant to put the government to its proof is one of the most fundamental guarantees of our Constitution.  This means that a defendant has no obligation to produce evidence, to call witnesses, nor can he ever be compelled to testify.  Mr. Cadden has a constitutional right not to testify. Thus, you may not draw an inference of guilt from the fact that Mr. Cadden did not testify, or even discuss that fact in your deliberations.  Nor should you infer guilt or draw a negative inference from any alleged refusal to voluntarily provide information to investigators.  A person has no legal obligation to voluntarily provide information requested by investigators and there may be reasons to decline to do so.  Again, the burden rests on the government and the government alone to prove Mr. Cadden's guilt beyond a reasonable doubt.

Now, what is proof beyond a reasonable doubt?  The term is often used, and is probably pretty well understood intuitively, although it is not easily

defined.  Proof beyond a reasonable doubt does not mean proof beyond all possible doubt, or proof to a mathematical certainty, for almost everything in our common experience is open to some possible or imaginary doubt.  It does, however, mean that the evidence must exclude any reasonable doubt as to the defendant's guilt.

A reasonable doubt may arise not only from the evidence produced but also from the absence of relevant evidence.  Reasonable doubt exists when, after weighing and considering all of the evidence in the case, using your reason and common sense, you cannot say that you have a firm and settled conviction that a charge is true.

A defendant is never to be convicted on suspicion or conjecture.  If, for example, you were to view the evidence in the case as reasonably permitting either of two conclusions, one that Mr. Cadden is guilty of any one or more of the crimes charged, the other that he is not guilty of any one or more of these crimes, then it follows that you would be required to find him not guilty as to the particular charge at issue.

It is not enough for the government to establish a probability, even a strong probability, that a defendant is more likely guilty than not.  That is not enough.  Proof beyond a reasonable doubt must be proof of such a convincing character that you can, consistent with your oath as jurors, conscientiously

4

base your verdict upon it.  If you so find as to any or all of the charges against Mr. Cadden, you will return a verdict of guilty as to any or all of the charges. If, on the other hand, you think there is a real possibility that Mr. Cadden is not guilty of any or all of the charges in the Indictment, you must give him the benefit of that doubt, and find him not guilty of any or all charges.

Mr. Cadden was the President and Manager of Record for the New England Compounding Pharmacy, or NECC.  He and his wife were also minority shareholders in the company.  No matter how high his position in the corporate hierarchy, Mr. Cadden cannot be held criminally liable for the illegal acts of other corporate employees simply by virtue of his position.  He can be held liable only for those acts in which he was personally involved.

## Evidence in a Criminal Trial

Next I want to review with you what is meant by evidence in the context of a criminal trial.

Evidence is produced at a criminal trial in one of three ways.

First, through the sworn testimony of witnesses, both on direct and cross-examination.

Second, through physical objects, or exhibits, identified by a witness, and admitted as such during the trial.

Third, by stipulation, or agreement between the parties that certain

5

facts are true and need not be independently proven as such at trial. An example is the lengthy stipulation that the parties entered regarding the authenticity of a number of laboratory tests of drugs compounded by NECC. You will find copies of the written stipulations in this book, which also contains a verbatim copy of these instructions and the official verdict slip.

Certain things are not evidence and are not to be treated as such in your deliberations.

1.      Arguments and statements by lawyers, as I have previously cautioned, are not evidence. What the lawyers have said over the course of the trial you may find helpful, or even persuasive in reaching a verdict, but the facts are to be determined from your own evaluation of the testimony of the witnesses, the exhibits, and any reasonable factual inferences you choose to draw from the evidence that has been admitted.

2.      Questions to witnesses are not evidence. They can only be considered in the sense that they give context or meaning to a witness's answer.      It is permissible, as I explained, for attorneys to use leading questions, that is, questions that suggest their own answer, when cross-examining an opposing or hostile witness.  Leading questions can be a useful means of testing the credibility of a witness's statements, but you should be careful to separate the witness's answers from any assertions of fact the

6

leading question might contain.

3.     Objections to questions are not evidence.   Attorneys, as I explained at the beginning of the trial, have a duty to their clients to object when they believe that a question is improper under the rules of evidence. You should not be influenced by the fact that an objection was made or by the way I ruled on it.  If I sustained the objection, you should ignore the lawyer's question, and any assertion of fact that the question might have contained.  If the objection was overruled, you should treat the question and the witness's answer like any other.   If I struck a portion of a witness's testimony, you are not to consider it.

4.     Anything you may have seen or heard outside the courtroom during the course of the trial is not evidence.  This includes any publicity that preceded your empanelment as jurors and any news or social media accounts of the trial that you may have accidentally encountered during the past two and one-half months.  You must decide the case solely on the evidence that was offered and received in open court.

5.     Both sides have been permitted to present complex evidence in the form of charts and summaries.   These charts and summaries are admitted in order to save time and to simplify the inspection of the large number of documents they typically distill.  It is, however, the underlying

evidence, and the weight that you attribute to it, that gives the charts and summaries their evidentiary value.  If you are not satisfied that they accurately reflect the underlying evidence, you are free to reject them.

6.     If you have kept notes, as most, if not all of you have, remember that your notes are not evidence.  They are only an aid to be used during the deliberations to refresh your recollection of the testimony that was offered during the trial.

Regardless of the way in which evidence is presented, it comes in one of two forms, either as direct or as so-called circumstantial evidence.  Direct evidence is direct proof of a fact, usually offered through the testimony of a person who claims to have been an eyewitness to an event or a participant in a conversation.  Circumstantial evidence is proof of a fact, or a set of facts, from which you could infer or conclude that another fact is true, even though you have no direct evidence of that fact.

For instance, if you were to awake in the morning and, even though the day dawned bright and clear, see puddles of water on the street, you might draw the inference that it had rained during the night, even though your sleep had been uninterrupted.  In other words, the fact of rain is an inference that can be drawn from the presence of water on a street.  An inference may be drawn, however, only if it is reasonable and logical, and not if it is

8

speculative or based on conjecture.  If, for example, you observed puddles of water on your street, but not on any other street in your neighborhood, other facts, like a broken water main, or if you live in the suburbs, a neighbor's malfunctioning sprinkler system, might explain the presence of water.  In deciding whether to draw an inference, you must look at and consider all of the facts in the case in the light of reason, common sense, and your own life experience.

Neither type of evidence, direct or circumstantial, is considered superior or inferior to the other.  Both types of evidence may be considered in reaching your verdict and may be given whatever weight you, as the finders of fact, deem that evidence to be worth.

Most evidence received at trial is offered through the testimony of witnesses.   As the jury, you are the sole judges of the credibility of these witnesses.  If there are inconsistencies in the testimony, it is your function to resolve any conflicts, and to decide where the truth lies.

You may choose to believe everything that a witness said, or only part of it, or none of it. If you do not believe a witness's testimony that something happened, that of course is not evidence that it did not happen. It simply means that you must put aside that testimony and look elsewhere for credible evidence before deciding where the truth lies.

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things, or get confused, or remember an event differently.  Memory is not always reliable, and when someone recounts a story twice, it will seldom be identical in every respect, unless it is a memorized lie or the witness is possessed of extraordinary perception and recall.  It is for you to decide whether any contradictions in a witness's testimony are innocent lapses of memory or intentional falsehoods.  That may depend on whether important facts or small details are at issue, and how important the facts might have appeared to the witness at the time they were perceived.

Often it may not be so much what a witness says, but how he or she says it that might give you a clue whether or not to accept his or her version of an event as believable.  You may consider a witness's character, his or her demeanor on the witness stand, his or her frankness or lack of frankness in testifying, whether the witness was contradicted by anything that he or she said before the trial, and whether the testimony appears reasonable or unreasonable, probable or improbable, in light of all the other evidence in the case.  You may take into account how good an opportunity the witness had to observe the facts about which he or she testified, his or her mental and physical state at the time the observations were made, the degree of

10

intelligence the witness shows, and whether his or her memory seems accurate. You may consider a witness's motive for testifying, whether he or she displays any bias in doing so, and whether as a result he or she has an interest in the outcome of the case. Now simply because a witness has an interest in the outcome of the case does not mean that the witness is not trying to tell you the truth as he or she recalls it or believes it to have been. But a witness's interest in the case is a factor that you may consider along with everything else. You may also consider the fact that a witness may be perfectly sincere in his or her account of an event and simply be mistaken as to the truth.

Many of the witnesses that testified are government employees or law enforcement officers. These witnesses are entitled to no more or less credibility than any other witness by virtue of their employment.

As a rule, a witness is not permitted to offer an opinion about the facts to which he or she testifies, unless it concerns an every-day matter falling within our common experience. An exception is made for those who are asked to testify as experts in their particular field of specialty – I will use Dr. Mary Brandt, the Chief of the Centers for Disease Control Mycotic Diseases Branch, as an example. An expert like Dr. Brandt is a witness, who by education or experience has acquired specialized knowledge – in her case

knowledge acquired through study and laboratory investigations involving mycoses, or diseases involving fungal infections.  She is permitted to testify not only about what she knows about these infections, but also to give opinions derived from that knowledge, and the reasons for these opinions. This type of testimony is allowed in the belief that the knowledge of certain experts is so specialized that the facts that they have mastered are beyond the collective knowledge of the court and the jury.

The credibility of the testimony of an expert witness is, however, judged like that of any other witness.  Simply because the law allows a witness to give an opinion does not mean that you must accept that opinion.  If you decide that the opinion of an expert witness is not based on sufficient education or experience, or if you conclude that the reasons given for the opinion are not convincing or are outweighed by other evidence in the case, you may disregard the opinion entirely.

Several times it has been pointed out to you that certain witnesses have testified previously under oath about the subject matter of this trial in ways that you might find consistent or inconsistent with their testimony during the trial.  Because these statements were made under oath, you may consider them as if they were made here in the courtroom in evaluating the credibility of what these witnesses had to say during both direct and cross-examination.

12

You have heard testimony from a witness, Robert Ronzio, who earlier pled guilty to crimes related to Count III of the Indictment.  The fact that he has entered a guilty plea is not evidence that you may consider in assessing Mr. Cadden's guilt.  Mr. Ronzio is presumed to have acted after considering his own best interest in this matter, for reasons that are personal to him. Thus, his guilty plea and the accompanying plea agreement are to be considered only in assessing his credibility.

A witness who admits to committing a crime and testifies against others pursuant to a plea agreement almost always does so in the expectation of more lenient treatment as a reward for his cooperation.  A witness testifying in such circumstances may, of course, be completely truthful, which is why the government is permitted to present the testimony of witnesses who have entered a plea bargain or who have testified pursuant to a promise from the government that their testimony will not be used against them in a criminal prosecution.  Still, you should consider the testimony of a witness testifying pursuant to a plea agreement or under a grant of immunity with great care and caution.  You should scrutinize the testimony carefully to be certain that it is not shaded or shaped in such a way so as to serve the personal interests of the witness or the witness's perception of the government's expectations rather than the interest of the truth.

13

The weight of the evidence obviously does not depend on the number of witnesses testifying for one side or the other.   You must determine the credibility of each witness who testified, and then reach a verdict based on all of the believable evidence in the case.

## The Indictment

With these preliminary instructions in mind, let me turn to the Indictment in this case.   Let me first remind you that an Indictment is not evidence of any kind against a defendant. It is simply an accusatory document notifying a defendant that he must answer to the criminal charges it sets out.   An Indictment may allege more than one crime against a defendant; and when it does so, the different charges are stated separately in what we call counts.   Mr. Cadden has been charged with 96 counts of violations of federal law.

First, Mr. Cadden is charged in Count 1 with violating the Racketeer Influenced and Corrupt Organizations Act, or RICO as it is called by its acronym.   As predicate acts of RICO, the Indictment alleges that Mr. Cadden committed 77 acts of racketeering in violation of state or federal law, namely 25 acts of state second-degree murder and 52 acts of federal mail fraud.

Count 2 alleges that Mr. Cadden conspired, that is, entered an agreement with others, to violate the RICO statute. Under both state and

federal law, a conspiracy is a separate and distinct crime.

Count 3 charges Mr. Cadden with conspiring with others to defraud the United States, by impeding the ability of the Food and Drug Administration or FDA, to carry out its regulatory mission.

The Indictment in Counts 4-39, and 41-56 charges the 52 RICO predicate acts of mail fraud as separate substantive crimes.  Mr. Cadden is also charged in Counts 57-90 with violations of the Food, Drug and Cosmetic Act for allegedly introducing drugs into interstate commerce that had been prepared in insanitary conditions; in Counts 91-94 with introducing drugs into interstate commerce bearing false or misleading labels; and finally, Counts 95 and 99-100 of the Indictment charge Mr. Cadden with dispensing drugs into interstate commerce without valid prescriptions.

While the Indictment alleges various time frames in which the crimes are said to have occurred, the government's proof need not identify the exact date or dates of an alleged offense.  It is sufficient if the evidence establishes beyond a reasonable doubt that an offense was committed by a defendant on a date that is in reasonable proximity to the date or dates alleged.

## Theories of the Defense

In response to the allegations of the Indictment, Mr. Cadden states that he did not commit these crimes.  He has also raised several specific defenses.

15

I will describe some of these to you now, but you must keep in mind that Mr. Cadden has no burden to prove his defenses, and it is the government's burden to prove each and every element of the crimes charged beyond a reasonable doubt.  By explaining some of these defenses Mr. Cadden cannot be held to have assumed that burden.

With respect to the second-degree murder counts, Mr. Cadden contends that he could not have been acting with an awareness that his conduct would likely result in death. Based on the longstanding safety record of NECC in producing preservative-free methylprednisolone acetate (MPA) and other sterile injectables, Mr. Cadden contends that he had every reason to believe that the three MPA lots in question would be injected safely as had all those that preceded them.  Second, he maintains that he did not cause the contamination of one or more of the three lots at issue, or portions of them, nor did he do anything that caused the deaths of any of the 25 persons named in the murder racketeering acts.  He further contends that the government has failed to prove what actually caused some of the vials at issue to become contaminated, and therefore, has failed to prove what he did to cause the deaths of the 25 individuals named.  Third, he maintains that he reasonably relied on the expertise of Analytical Research Laboratories (ARL) to ensure that NECC was performing testing within the parameters of the United States

Pharmacopeia (USP) and, if there was substandard testing, it was because of the incorrect advice that ARL give him.  Fourth, he contends that he could not have conspired to defraud the FDA into believing that NECC was a compounding pharmacy rather than a manufacturer when the FDA itself was uncertain about how these terms were to be defined for regulatory purposes. Mr. Cadden further contends that there was no agreement among the alleged co-conspirators about whether to register with the FDA as a manufacturer. Fifth, Mr. Cadden maintains that NECC's environmental monitoring results should be evaluated using the USP-797 standards and not the more stringent and voluntary Standard Operating Procedures (SOP) standards that Mr. Cadden contends applied to NECC's previous Clean Room.  And finally, Mr. Cadden maintains that in shipping certain drugs without patient-specific prescriptions, he relied in good faith on often confusing state laws that permitted office use – a practice that allowed doctors in some states to order certain quantities of drugs without patient names, in order to maintain supplies in their offices to treat patients as needed.

## The United States Pharmacopeia

Let me return briefly to the subject of the United States Pharmacopeia, or USP standards. As I explained at the outset of the trial, these standards are formulated and published by a Council of Experts chosen by the United

17

States Pharmacopeia Convention (USPC), a nonprofit organization that owns the copyright to the USP compendium of drug information. The USPC was founded in 1820 by doctors who, as declared in their founding statement, "recognized an essential need for a national lexicon of drug names and formulas in the United States." The Convention is composed of volunteer members. A Board of Trustees oversees the staff of employees and volunteers who assemble and publish the USP and related materials. Pharmacy Compounding Chapter 797 of the USP, on which the Indictment heavily draws, was promulgated by the USPC in its official version in 2004, and revised in 2008.

It is important to remember that the standards contained in the USP are not drafted by the United States government. However, when Congress drafted the Food, Drug and Cosmetic Act, it referenced the USP as a source for defining best practices for the compounding and drug manufacturing industries. While the USP standards may be considered by you in determining the standard of care that Mr. Cadden may or may not have followed, a deviation from a provision of the USP, by itself, is not a criminal violation. Congress did not, in other words, enact the Pharmacopeia as a criminal statute.

**Racketeer Influenced and Corrupt Organizations Act (RICO)**

18

Count 1 charges Mr. Cadden with a violation of the RICO Statute. Specifically, the Indictment alleges that NECC and its affiliate Medical Sales Management (MSM) were a criminal enterprise through which Mr. Cadden conducted a pattern of racketeering activity to obtain money and property by fraudulent pretenses.

Congress passed the RICO Statute in 1970 seeking to eradicate "organized crime in the United States." Unlike traditional law enforcement measures that focus solely on specific acts committed by individuals, or conspiracies to commit specific acts, RICO seeks to attack the organization itself. Congress believed that such enterprises were, for a variety of reasons – including their structure, their ability to endure over time, and the economic resources at their disposal – far more dangerous than ordinary criminal conspiracies. Although the statute was originally intended to fight the economic effects of sophisticated organized crime, such as the Mafia, over time RICO has been extended to apply to individuals who are part of enterprises not traditionally thought of as "organized crime."

The RICO statute, section 1962(c) of Title 18 of the United States Code, provides in pertinent part that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate,

directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . .

To prove that a defendant violated Section 1962(c), the government must establish beyond a reasonable doubt each of the following five things:

First:      That an enterprise existed as alleged in the Indictment;

Second:    That the enterprise affected interstate or foreign commerce;

Third:     That the defendant was associated with or employed by the enterprise;

Fourth:    That the defendant engaged in a pattern of racketeering activity, which consisted of the knowing commission of at least two racketeering acts; and

Fifth:     That the defendant conducted or participated in the conduct of the enterprise through that pattern of racketeering activity.

I will now briefly address each of these elements.

The first element that the government must prove beyond a reasonable doubt is that an "enterprise" existed.  An enterprise, as here, may be a corporate legal entity, like NECC and MSM, and will satisfy the RICO statute so long as it has a structure, common purpose, ongoing existence during the alleged period of criminal activity, and personnel who manage and carry out its affairs.

The second element the government must prove beyond a reasonable

doubt is that the enterprise was engaged in or had an effect upon interstate or foreign commerce.  Interstate commerce includes the movement of goods, services, money, and individuals between or among states.

The third element the government must prove beyond a reasonable doubt is that Mr. Cadden was associated with or employed by the enterprise. Here there is no dispute that Mr. Cadden, as the President of NECC, was associated with its activities as well as those of its marketing arm, MSM.

The fourth element the government must prove beyond a reasonable doubt is that Mr. Cadden engaged in a pattern of racketeering activity.  To show a pattern of racketeering activity, the government must prove that Mr. Cadden committed at least two racketeering acts, called predicate acts, within ten years of each other that were related, and posed a threat of continued criminal activity.  The government has alleged 77 such predicate acts, which I will describe momentarily in detail.  The concept of relatedness is rooted in the common sense understanding that disconnected acts do not constitute a pattern, nor are they likely to pose a threat of continued racketeering activity.  To prove relatedness, the government must prove that the acts had the same or similar purposes, results, participants, victims, or methods of commission, and are not isolated events.  To prove a threat of continued racketeering activity, the government must establish that any

21

related racketeering acts extended over a substantial period of time, or that they included a specific threat of repetition extending indefinitely into the future.

The fifth and final element that the government must prove beyond a reasonable doubt is that Mr. Cadden conducted or participated in the conduct of the enterprise through the pattern of racketeering activity. To prove participation in the conduct of the enterprise the government must show that Mr. Cadden played a substantive part in the operation or management of the enterprise and that there is a meaningful connection between his illegal acts and the affairs of the enterprise. To show a meaningful connection, the government must establish either: (1) that Mr. Cadden's position in the enterprise facilitated commission of those illegal acts and that the racketeering acts had some impact or effect on the enterprise; or (2) that the acts were in some way related to the affairs of the enterprise; or (3) that Mr. Cadden was able to commit the acts by virtue of his position or involvement in the affairs of the enterprise.

## Racketeering Acts

Count 1 alleges that Mr. Cadden committed 77 Racketeering Acts, which are violations of federal or state law. These Racketeering Acts include:

1.    Second Degree Murder in violation of Michigan state law

(Racketeering Acts 28-35);

2.     Second Degree Murder in violation of Tennessee state law (Racketeering Acts 36-42);

3.     Second Degree Murder in violation of Indiana state law (Racketeering Acts 43-45);

4.     Second Degree Murder in violation of Maryland state law (Racketeering Acts 46-48);

5.     Second Degree Murder in violation of Virginia state law (Racketeering Acts 49-50);

6.     Second Degree Murder in violation of Florida state law (Racketeering Act 51);

7.     Second Degree Murder in violation of North Carolina state law (Racketeering Act 52); and,

8.     Mail Fraud in violation of federal law (Racketeering Acts 1-27, 53-61, 63-78).

## Racketeering Acts – Second-Degree Murder

Let me describe generally the common elements of second-degree murder as it applies to this case before I turn to the specific laws in the seven states where the murders are alleged to have occurred.  There are three essential things that the government must prove beyond a reasonable doubt.

First, that an unnatural death occurred within the territorial jurisdiction of the affected state;

Second, that the victim died as a result of an act or acts taken by Mr. Cadden; and

Third, that Mr. Cadden acted with a culpable state of mind.

The first element is not in dispute. Mr. Cadden is not contesting the fact that each of the twenty-five victims died of fungal meningitis caused by an injection of a contaminated MPA compounded by NECC.

The second element is contested.  With respect to the acts imputed to Mr. Cadden, the Indictment first states that on May 21, 2012, June 29, 2012, and August 10, 2012, three lots of preservative-free MPA compounded by NECC were improperly sterilized because Glenn Chin, allegedly with Mr. Cadden's knowledge, kept the drugs in the autoclave for less than the prescribed 20 minutes, and did not verify the autoclave sterilization process through use of a biological indicator as required by USP-797.

Next, the Indictment states that Mr. Chin, allegedly acting at Mr. Cadden's direction, selected too few samples from these lots of MPA for sterility testing, and that Mr. Chin, with Mr. Cadden's knowledge, did not conduct sterility testing of the filled vials shipped to NECC customers for patient use because he drew the samples to be tested from the preservative-free MPA stock before filling the individual vials.

Third, the Indictment states that Mr. Chin, again allegedly with the knowledge of Mr. Cadden, directed NECC technicians to label vials of the drugs as injectable during a time period when NECC had recorded action-

level environmental sample results in Clean Room 1 and had not taken remedial action as required by USP-797.

To prove causation, the government must prove beyond a reasonable doubt not only that contaminated drugs distributed by NECC caused each of the victims' deaths – that is not contested – but also that the deaths were caused by Mr. Cadden's actions.  It is not enough that an act taken by Mr. Cadden merely made it possible for the deaths to occur.

The third element (state of mind) is also contested.  The government must prove beyond a reasonable doubt that Mr. Cadden acted with the culpable state of mind that each of the seven states requires for a finding of guilt on a theory of second-degree murder.   While the state-of-mind requirements in each of the seven states are similar, there are differences, at times subtle, in the phrasing authorized by each state's highest court to be used in jury instructions on second-degree murder.  I am going to set out each of the descriptions for you separately state-by-state as appearing in the Indictment.

**Michigan** (Racketeering Acts 28-35: Karina Baxter, Paula Brent, Gayle Gipson, Donna Kruzich, Lyn Laperriere, Mary Plettl, Sally Roe, Emma Todd).

Under Michigan law, to be convicted of second-degree murder, a defendant must be shown to have knowingly created a very high risk of death

or great bodily harm knowing that death or such harm would be the likely result of his actions.  Stated another way, a defendant must be shown to have acted in wanton and willful disregard of the likelihood that his conduct would result in the victim's death or great bodily harm.  Negligent, even grossly negligent conduct, will not support a conviction for second-degree murder.

**Tennessee** (Racketeering Acts 36-42: Marie Hester, Eddie Lovelace, Donald McDavid, Diana Reed, Thomas Rybinski, Carol Wetton, Earline Williams).

Under Tennessee law, a defendant must be shown to have acted knowingly, that is, with an awareness that his conduct was reasonably certain to cause the victim's death.  Negligent, or even criminally negligent conduct will not support a conviction for second-degree murder.

**Indiana** (Racketeering Acts 43-45: Pauline Burema, Kathy Dillon, Alice Machowiak).

Under Indiana law, a defendant must be shown to have acted with an awareness of a high probability that his conduct would result in death. Negligent, even grossly negligent conduct, will not support a conviction for second-degree murder.

**Maryland** (Racketeering Acts 46-48: Bahman Kashi, Brenda Rozek, Edna Young).

Under Maryland law, a defendant must be shown to have been conscious of the very high degree of risk to the life of the victim created by

his conduct, and to have acted with extreme disregard of those life endangering consequences.  Negligent, even grossly negligent conduct, will not support a conviction for second-degree murder.

**Virginia** (Racketeering Acts 49-50: Kathy Sinclair, Douglas Wingate).

Under Virginia law, a defendant must be shown to have embarked willfully and purposefully on a course of wrongful conduct likely to cause death or great bodily harm.  Negligent, even grossly negligent conduct, will not support a conviction for second-degree murder.

**Florida** (Racketeering Act 51: Godwin Mitchell).

Under Florida law, a defendant must be shown to have acted in a manner imminently dangerous to the life of another and demonstrating a depraved mind.  A showing of a depraved mind requires proof of an act demonstrating indifference to human life that is performed with ill will, hatred, spite, or evil intent, and would be known by a person of ordinary judgment to be reasonably certain to result in death or serious bodily injury. Negligent, or even reckless conduct, will not support a conviction for second-degree murder.

**North Carolina** (Racketeering Act 52: Elwina Shaw).

Under North Carolina law, a defendant must be shown to have intentionally committed an act with malice that was likely to cause death or

serious bodily injury.  Malice arises when an act inherently dangerous to human life is intentionally done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.  Culpably negligent conduct, by itself, will not support a conviction for second-degree murder.

## Accident

Where the defense is that a death was accidental, the burden falls to the government to prove beyond a reasonable doubt that the death was not an accident, but rather the natural and probable consequence of an act that the defendant knew was highly likely to cause death.

## Racketeering Acts – Mail Fraud

Racketeering Acts 1-27, 53-61, and 63-78 in Count 1, and Counts 4-39, and 41-56 of the Indictment charge Mr. Cadden with violating the federal mail fraud statute.  The crime of mail fraud is codified as 18 United States Code, section 1341.  The statute prohibits the use of the mails or an interstate carrier, public or private, in furtherance of any scheme or artifice to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations, or promises.

The 52 alleged Racketeering Acts of mail fraud are broken up into four separate groups.

28

The first group is Racketeering Acts 1 through 27.  With respect to these Racketeering Acts, the Indictment alleges that in or around May 2012 through October 2012, Mr. Cadden and Mr. Chin knowingly defrauded NECC's customers and the patients of those customers by selling for a profit preservative-free MPA, which was made in a manner that did not meet the standards set forth in the USP.  More specifically, the Indictment alleges that as part of this scheme to defraud, Mr. Chin, acting at the direction of Mr. Cadden, compounded three separate lots of MPA that were all made in a manner that did not meet the USP standards in three particular respects. (These are the same three deficiencies that the government alleges with respect to the second-degree murder Racketeering Acts).   First, the government alleges that Mr. Chin, allegedly with Mr. Cadden's knowledge, attempted to sterilize the three lots in an autoclave for 15 minutes, rather than 20 minutes, and did not verify the sterilization process through the use of a biological indicator.  Second, as I explained previously, the Indictment states that Mr. Chin, allegedly acting at Mr. Cadden's direction, selected too few samples from these lots of MPA for sterility testing, and that Mr. Chin, again allegedly with Mr. Cadden's knowledge, did not conduct sterility testing of the filled vials shipped to NECC customers for patient use because he drew the samples to be tested from the preservative-free MPA stock before

29

filling the individual vials.

Third, the Indictment states that Mr. Chin, again allegedly with Mr. Cadden's knowledge, directed technicians to label vials of the drugs as injectable during a time period when NECC had recorded action-level environmental sample results in Clean Room 1.

The second group, Racketeering Acts 53 through 61 and 63, charges that in or around July of 2012 through October of 2012, Mr. Cadden, along with others, knowingly shipped to customers throughout the country drugs identified as sterile prior to receiving the results of testing confirming the sterility and quality of the drugs.  These Racketeering Acts further allege that NECC failed to inform its customers that independent sterility testing had not yet been completed at the time of shipment, and in instances in which ARL issued non-sterile or otherwise out-of-specification results, NECC failed to notify the customers of the results, institute a recall, and conduct an investigation into the source of the results.

The third group, Racketeering Acts 64 through 68, charges that in or around January of 2008 through July of 2012, Mr. Cadden, along with others, knowingly compounded drugs using an ingredient that had expired on or about January 23, 2007, in violation of the USP.  These Racketeering Acts further allege that to disguise the use of the expired ingredients, Mr.

30

Cadden completed and caused others to complete documents with fictitious expiration dates.  These Racketeering Acts also allege that Mr. Cadden and others caused the drugs to be shipped to customers without notifying them of the use of expired ingredients, and that the drugs were labeled with fictitious beyond-use dates indicating expiration dates three to six months after the date the drugs expired.

The fourth group, Racketeering Acts 69 through 78, charges, that from in or around March of 2010 through August of 2012, Mr. Cadden, along with others, knowingly represented to customers that NECC complied with Massachusetts pharmacy regulations even though Mr. Connolly, who had voluntarily surrendered his pharmacy technician registration in or about January of 2009, worked as a pharmacy technician in Clean Room 2 filling cardioplegia orders for hospital customers. These Racketeering Acts further allege that to conceal Mr. Connolly's presence from regulators, Mr. Connolly operated the equipment in Clean Room 2 using Mr. Cadden's username and password.

I will describe the legal elements of mail fraud in detail later in these instructions when I turn to the substantive mail fraud counts.

## Unanimity

With respect to Count 1, the government, as I explained, must prove

beyond a reasonable doubt that Mr. Cadden committed at least two of the Racketeering Acts recited in the Indictment within the prescribed ten years to find him guilty of Count 1.  In this regard, you must agree unanimously on at least two Racketeering Acts that he committed.  It is not enough that you collectively believe that two Racketeering Acts were committed; you must agree unanimously on at least two of the same acts.  If you cannot come to such an agreement, you must find Mr. Cadden not guilty of Count 1.

### Conspiracy

Mr. Cadden is charged in two separate conspiracies: In Count 2 with a conspiracy to violate RICO; in Count 3 with a conspiracy to defraud the FDA by misleading it into believing that NECC was a Massachusetts regulated compounding pharmacy when in fact it was operating as a drug manufacturer subject to FDA regulation and oversight.  A conspiracy is an agreement between or among two or more persons to accomplish an unlawful purpose, that is, one forbidden by law.

To prove Mr. Cadden guilty of the crime of conspiracy, the government must prove three essential elements beyond a reasonable doubt.

First:  That the conspiracy alleged actually existed at or about the time alleged in the Indictment.

Second:  That Mr. Cadden knowingly and willfully joined in that agreement with the purpose of seeing it succeed in

32

accomplishing its unlawful goals.

Third:  That one of the conspirators committed an overt act, that is, took an affirmative step in an effort to further the purpose of the conspiracy, at some time during its existence.

An act is done "knowingly" if a defendant is aware of what he is doing. An act or a failure to act is "willful" if it is done voluntarily and purposefully, with the specific intent to do something the law forbids, that is, with a bad purpose, either to disobey or disregard the law, and not because of accident, ignorance, good faith mistake, or some other innocent reason.

With respect to the RICO conspiracy alleged in Count 2, the Indictment alleges and the government must prove, that Mr. Cadden knowingly and willfully entered into an agreement with Glenn Chin, Gene Svirskiy, Christopher Leary, Joseph Evanosky, Scott Connolly, Sharon Carter, and Alla Stepanets to violate the RICO statute through a pattern of racketeering activity by committing at least two specific predicate acts of mail fraud within a ten-year period.  With respect to the conspiracy to defraud the FDA alleged in Count 3, the Indictment alleges, and the government must prove, that Mr. Cadden conspired with Sharon Carter, Alla Stepanets, Greg Conigliaro, and Robert Ronzio to make false or misleading statements, or materially misleading omissions despite a duty to disclose the information with the intent of deceiving the FDA about the true nature of NECC's business in

order to deflect the FDA from carrying out the regulatory oversight it would otherwise have exercised over NECC.

To prove a conspiracy, the government is not required to show that the conspirators entered into an express or formal agreement, or that they directly, by spoken or written words, stated among themselves just what their illegal purpose was, or outlined the details of their scheme, or the means by which they hoped to succeed.  Indeed, it would be unusual if there was a formal meeting, or a written contract, or even a specific oral agreement.  A conspiracy, by its very nature, is a clandestine enterprise.   But the government must prove beyond a reasonable doubt that Mr. Cadden shared a general understanding of the goals of the conspiratorial agreement.  It is not necessary, in order to convict a defendant of a charge of conspiracy, that the objectives or purpose of the conspiracy, whatever they may be, have been achieved or accomplished.  The ultimate success or failure of the conspiracy is irrelevant.  Rather the agreement is the essential aspect of the crime of conspiracy.

A defendant cannot be convicted on the basis of suspicion or surmise; he cannot be convicted because he associated with the wrong people or simply because he knew that they were engaged in illegal activity; nor can he be convicted because he happened to be present while a crime was being

34

committed by others, even if his actions may appear to have furthered the object of the conspiracy.  Rather, the government must prove beyond a reasonable doubt that a defendant willfully joined the conspiracy and embraced its illegal purpose.

Proof that a defendant joined in the agreement must be based on evidence of his own words and actions.  You need not find that the defendant knew every detail of the conspiracy, or knew every other co-conspirator, or participated in every conspiratorial act alleged by the government, but the government must prove beyond a reasonable doubt that he was aware of the essential terms of the agreement at issue.  Even if the defendant was not part of an agreement from its inception, he can be found guilty if at some time during the existence of the conspiracy he knowingly and intentionally became a party to the agreement.

A conspirator cannot be held accountable for the crimes of others that are outside the scope of the agreement to which he is a party or crimes committed by others that he could not have reasonably foreseen.  Nor can he be held liable for crimes committed by a co-conspirator prior to his joining the conspiracy, even if he is aware that such crimes took place.  But so long as he remains a member of the partnership in crime, he is responsible for the words and actions undertaken by his coconspirators that are intended to

35

further the conspiracy's illegal goals.

Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy that are in furtherance of the illegal common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements and omissions.  This is so even if such acts were done and statements were made in the defendant's absence and without his knowledge.

Since an essential element of the crime of conspiracy is the intent to commit the underlying crime, it follows that good faith on the part of a defendant is a complete defense.  If you find that Mr. Cadden believed in good faith that he was acting properly, even if he was mistaken in that belief, and even if others were injured by his conduct, there would be no crime.  As with other material aspects of an offense, Mr. Cadden has no burden to establish his good faith.  The burden is on the government to prove the lack of good faith beyond a reasonable doubt.

## Mail Fraud

Racketeering Acts 1-27, and 53-61, and 63-78 included in Count 1, and Counts 4-39 and 41-56 of the Indictment charge Mr. Cadden with violating the federal mail fraud statute.  The Indictment alleges that Mr. Cadden

36

devised a scheme to defraud NECC's customers and the patients of those customers, and to obtain money and property by means of materially false and fraudulent representations regarding the quality and production of NECC's drugs. Specifically, the Indictment alleges that Mr. Cadden and the pharmacists at NECC failed to properly sterilize NECC's drugs; failed to properly test NECC's drugs for sterility; failed to wait for test results before shipping NECC's drugs to customers; failed to inform customers about non-sterile and out-of-specification test results of drugs that had already shipped for use in patients; used expired and expiring ingredients in manufacturing NECC's drugs; used expired and expiring stock solutions in manufacturing NECC's drugs; mixed and mislabeled drug lots to conceal the use of expiring older lots or untested newer lots; employed an unlicensed pharmacy technician to manufacture drugs; failed to properly clean and disinfect the Clean Rooms in which drugs were manufactured; and routinely ignored NECC's internal environmental monitoring reports alerting them to mold and bacteria within the Clean Rooms. The Indictment further alleges that despite these issues Mr. Cadden marketed NECC as in compliance with all pharmacy regulations, and its drugs as safe for human use.

The crime of mail fraud is codified as 18 United States Code, section 1341. The statute prohibits the use of the mails or an interstate carrier, public

or private, in furtherance of any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

For you to find Mr. Cadden guilty of mail fraud, you must be convinced that the government has proven each of the following four things beyond a reasonable doubt:

> First: That there was a scheme, substantially as charged in the Indictment, to defraud or to obtain money or property from NECC's customers and the patients of those customers by means of false or fraudulent pretenses;

> Second: That the scheme involved the misrepresentation or concealment of a material fact or matter, or involved a false statement, assertion, half-truth or knowing concealment concerning a material fact or matter;

> Third: That Mr. Cadden knowingly and willfully participated in the scheme with the intent to defraud; and,

> Fourth: That for the purpose of executing the scheme or in furtherance of the scheme, Mr. Cadden caused a private or commercial interstate carrier such as Federal Express to be used on or about the date alleged.

A scheme to defraud is ordinarily accompanied by a desire or purpose to bring about some gain or benefit to oneself or some other person or by a desire or purpose to cause some loss to another.  The term "defraud" means to deprive another of something of value by means of deception or cheating.  The term "false or fraudulent pretenses" means any false statement or

assertion that concerns a material aspect of the matter in question, that was either known to be untrue when made or made with reckless indifference to its truth and made with the intent to defraud.  The definition includes actual, direct false statements as well as half-truths and the knowing concealment of facts.  To satisfy its burden of proof that a fact is "material," the government is not required to show that it succeeded in influencing or deceiving the decision maker to whom it was addressed.  Rather, a fact or matter is "material" if it has a natural tendency to influence or is capable of influencing the decision maker involved.

A defendant acts "knowingly" if he is aware of his actions, realizes what he is doing, and does not act out of ignorance, mistake, or accident.  Intent or knowledge cannot usually be proved by direct evidence because there is no way to directly scrutinize the workings of the human mind.   In determining what Mr. Cadden knew or intended at a particular time, you may consider any statements he made or acts that he did or failed to do in the context of all other facts and circumstances in evidence.

In deciding whether Mr. Cadden acted "knowingly," you may infer that he had knowledge of a fact if you find that he deliberately closed his eyes to a fact that otherwise should have been obvious to him.  In order to infer knowledge, you must find that two things have been established.  First, that

Mr. Cadden was aware of a high probability of the fact in question. Second, that he willfully made himself blind to that fact. It is important, however, to bear in mind that mere negligence or mistake in failing to learn a fact is not sufficient. There must be a deliberate effort to remain ignorant of the fact.

"Intentionally" means purposefully. "Willfully" means to participate voluntarily with the specific intent to do something that the law forbids. To act with "intent to defraud" means to act willfully and with the specific intent to deceive or cheat for the purpose of either causing some financial loss to another or to bring about some financial gain to oneself. As with conspiracy, if Mr. Cadden acted in good faith, he cannot be guilty of the crime of mail fraud. The burden of proving intent, as with all other elements of a crime, rests with the government.

It is not necessary for the government to prove that all of the details alleged in the Indictment concerning the scheme or the material transmitted by mail was false or fraudulent or that the use of the mail was intended as the specific or exclusive means of accomplishing the alleged fraud. What must be proven beyond a reasonable doubt is that a defendant knowingly devised or intended to devise a scheme to defraud that was substantially the same as the one alleged in the Indictment, and that the use of the mails, on or about the dates alleged, was closely related to the scheme because a

defendant either received something in the mail or caused it to be mailed in an attempt to carry out the scheme. To "cause the mail to be used" is to do an act with knowledge that the use of the mails, including private commercial carriers, will foreseeably follow in the ordinary course of business.

## Food, Drug and Cosmetic Act

I will now turn to the counts of the Indictment that allege three types of violations of the federal Food, Drug and Cosmetic Act (FDCA). Counts 57-90 charge Mr. Cadden with introducing into interstate commerce adulterated drugs, that is, drugs that were prepared, packed, or stored under insanitary conditions. Counts 91-94 charge Mr. Cadden with introducing into interstate commerce misbranded drugs, that is, drugs bearing false and misleading labeling. Finally, Counts 95 and 99-100 charge Mr. Cadden with introducing into interstate commerce misbranded drugs, that is, drugs that were dispensed without a valid prescription by a practitioner licensed by law to administer the drugs. All of these counts were allegedly undertaken with the intent to defraud and mislead.

## Insanitary Conditions

In order for you to find the defendant guilty of introducing adulterated drugs into interstate commerce, you must first find that the government proved beyond a reasonable doubt each of the following three elements: (1)

41

that Mr. Cadden introduced drugs, or delivered them for introduction into interstate commerce; (2) that he knew that the drugs were adulterated, in that he prepared, packed, or held them under insanitary conditions; and (3) that Mr. Cadden placed the drugs in interstate commerce with the intent to defraud or mislead.

The FDCA defines a "drug" as an "article intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or other animals," and "articles (other than food) intended to affect the structure or any function of the body of man or other animals."

"Interstate commerce," as I previously explained, means commerce between any state and any other state.

The term "insanitary conditions" means conditions in which drugs may become contaminated with filth.  "Filth" is used in the statute in its ordinary sense of dirty, grimy, or unclean.  The government is not required to prove any actual contamination of the drugs to establish adulteration, but only that there was a reasonable expectation that the drugs could become contaminated.

If you find that the government has met its burden of proving each of these elements beyond a reasonable doubt, then you must proceed to the next step, and that is to determine if Mr. Cadden acted with the intent to

defraud and mislead customers.  I will now define those terms for you.

An intent to defraud or mislead signifies a departure from fundamental honesty, or fair play and candid dealings in the general life of the community. To act with "intent to defraud" means to act knowingly and with the intention or the purpose to deceive or to cheat.

An intent to defraud or mislead may be shown by evidence that Mr. Cadden took actions to conceal or prevent the discovery of the truth.  The deceit must be about something material, that is, something important that has a natural tendency to influence, or that is capable of influencing, a customer. The government does not have to prove that any customer was, in fact, influenced, only that Mr. Cadden intended such a result.

As I have previously explained, with any other offense alleging an intent to defraud or mislead, the government must prove beyond a reasonable doubt that Mr. Cadden did not act in good faith.

### False and Misleading Labeling

Counts 91-94 charge Mr. Cadden with introducing misbranded drugs into interstate commerce with the intent to defraud or mislead.  In order for you to find Mr. Cadden guilty of introducing misbranded drugs into interstate commerce, you must find that the government proved beyond a reasonable doubt: (1) that Mr. Cadden introduced drugs, or delivered them

for introduction into interstate commerce; (2) that the drugs were misbranded, in that the labeling for the drugs was false or misleading; and (3) Mr. Cadden acted with the intent to defraud or mislead.

A drug is misbranded if any word, statement, or other information required by the FDCA to appear on the label or labeling is false or misleading. Labeling means any and all written, printed, or graphic material that accompanies the drug. Labeling need not be false or misleading in its entirety; any single material misrepresentation or material omission in the labeling can make it false or misleading.

## Dispensing Without Prescriptions

Counts 95 and 99-100 charge Mr. Cadden with introducing drugs into interstate commerce without a valid prescription. In order for you to find Mr. Cadden guilty on these counts you must find that the government proved beyond a reasonable doubt each of the following four elements: (1) that Mr. Cadden introduced drugs, or delivered them for introduction into interstate commerce; (2) that a valid prescription for the drugs was required; (3) that the drugs were dispensed without such a valid prescription issued by a practitioner licensed by law to administer such a drug; and (4) that Mr. Cadden dispensed the drugs with the intent to defraud or mislead.

Section 353(b)(1) of the FDCA states that that prescription drugs "shall

be dispensed only (i) upon a written prescription of a practitioner licensed by law to administer such drug . . . [and] the act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded."

The term "dispensing" means the filling of a medical prescription and the delivery of it to the end-user patient. In other words, a pharmacist dispenses a drug when he acts in his role as a licensed professional authorized to fill (put together) a medical prescription and then delivers it to the end-user. A "prescription" means a written order that is directions for the preparation and administration of a medicine, remedy, or drug for a real patient who needs it after an examination or consultation by a licensed practitioner who has a physician-patient relationship with the patient. To be valid under the FDCA, a prescription must be issued in the usual course of a professional practice for a legitimate medical purpose. Whether a prescription has been issued in the usual course of a professional practice for a legitimate medical purpose under the FDCA is determined in part by reference to the laws and regulations of the state in which the physician is licensed to practice medicine.

### Aiding and Abetting

Except for Counts 2 and 3, which charge conspiracy, each of the other

45

counts in which Mr. Cadden is named charge substantive offenses. There are two ways in which the government can prove Mr. Cadden guilty. The first is by convincing you that he personally committed or participated in the offense charged. The second is by showing that he aided and abetted someone else in committing the offense.

Title 18 U.S.C. § 2, states in relevant part:

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

To "aid and abet" means intentionally to help someone else commit a crime. To prove aiding and abetting, the government must prove beyond a reasonable doubt the following three things.

First, that a defendant knew that the offense charged was to be committed or was being committed by another;

Second, that the defendant knowingly did some act for the purpose of aiding, commanding, or encouraging the commission of the offense; and

Third, that the defendant acted with the knowledge that his actions would assist in the commission of the crime.

Mr. Cadden is also charged with aiding and abetting the alleged murder Racketeering Acts. The various state laws are substantially identical to the federal statute I have just described, although they use slightly different terminology. Thus, the government must, under a state-law theory of aiding

46

and abetting, prove beyond a reasonable doubt that Mr. Cadden knowingly aided, commanded, or encouraged another to commit the alleged murder Racketeering Acts, and did so with the mental state required by the state's law for a conviction of second degree murder.

General suspicion that an unlawful act may occur, or merely being present at the scene of the offense, or merely knowing that an offense is being committed or is about to be committed is not sufficient to support a conviction on a theory of aiding and abetting.  The government rather must prove that Mr. Cadden knowingly and deliberately associated himself with the offense in some way as a participant who wanted the offense to be committed, and not as a mere spectator.

A defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its execution to be guilty of aiding and abetting.  Nor is the government required to prove that the defendant knew all of the details of the criminal activity to be guilty as an aider and abetter.  But to be guilty of deliberately assisting the commission of a crime, a defendant must know the illegal nature of the venture and share the same intent as his principal in bringing the venture to its fruition.

An act is done knowingly by a defendant if he is aware of what he is doing and does not act through mere ignorance, mistake, or accident.

47

## DELIBERATIONS

I will now say a few words about your deliberations.

It is your duty to discuss the case with your fellow jurors for the purpose of reaching agreement if you can do so. Each of you must decide the case for yourself, but should do so only after considering all of the evidence, listening to the views of your fellow jurors, and discussing the case fully with the other jurors.  This case has taken a great deal of time to prepare and try. There is no reason to think that it could have been better tried – it was tried very ably by both sides – or that another jury would be better qualified to render a verdict.   It is important therefore that you reach a verdict if you can do so conscientiously.   You should not hesitate to reconsider your own opinions from time to time and to change them if you become convinced that they are wrong.  However, do not surrender an honest conviction as to the weight and effect of the evidence simply for the expedience of arriving at a verdict.

Your verdict must be unanimous as to whether Mr. Cadden is guilty or not guilty of each of the charges that is being submitted to you for a verdict. Each charge must be considered separately.  You may find Mr. Cadden guilty of all charges, you may find him not guilty of all charges, or you may find him guilty of some charges and not guilty of others.  But remember that your

verdict as to each charge must be unanimous.

You may not draw any inference, favorable or unfavorable to the government, from the fact that any other person was not named as a defendant or is not on trial before you in this case. The question of possible guilt of others unnamed should not enter your thinking. Similarly, you are not to consider whether Mr. Cadden might be guilty of some other crime that the government for whatever reason has chosen not to prosecute. Your task is to determine whether the government has proved beyond a reasonable doubt that he committed the crimes that are actually alleged. The matter of sentencing should also not be a factor in your deliberations. Sentencing is the sole responsibility of the court.

Remember also that your verdict must be based solely on the evidence in the case and the law as I have given it to you, and not on anything else.

And finally, as I have instructed, bear in mind that the government has the burden of proof and that you must be convinced of Mr. Cadden's guilt beyond a reasonable doubt to return a guilty verdict. If you find this burden has not been met, then you must return a verdict of not guilty.

It is very important that you not communicate with anyone outside the jury room about your deliberations or anything touching this case. There is only one exception to this rule. If it becomes necessary during your

deliberations to communicate with me, you may send a note through the court officer, signed by the juror selected as your foreperson.  No member of the jury should ever attempt to communicate with the court except by means of a signed writing.