UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 14-10363-RGS

UNITED STATES OF AMERICA

v.

BARRY J. CADDEN

MEMORANDUM AND ORDER
ON FORFEITURE OF PROPERTY

September 27, 2017

STEARNS, D.J.

At defendant Barry Cadden's sentencing, a decision on the government's motion for an order of forfeiture[1] was deferred to permit the parties to brief, among other issues, the implications of the Supreme Court's (then) just issued decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017). Before the briefing could be completed, Cadden filed a notice of appeal, divesting this court of jurisdiction. *See United States v. George*, 841 F.3d 55 (1st Cir. 2016). On August 9, 2017, the government filed an unopposed motion in the Court of Appeals for a stay of the appeal and for a limited remand to this court for a ruling on the motion for forfeiture. *See*

---

[1] *See* Government's Motion for Forfeiture of Property, Dkt #1110.

1

Appeal No. 17-1694. The Court of Appeals granted the motion to remand on August 14, 2017.

The parties now agree, *see* Dkt #1185 and #1194, that *Honeycutt* applies to asset forfeiture in the RICO context.[2] *Cf. United States v. Gjeli*, 867 F.3d 418, 421 (3d Cir. 2017). In other words, a RICO forfeiture must be "limited to property the defendant himself actually acquired as the result of the crime." *Honeycutt*, 137 S. Ct. at 1635. As the First Circuit cautioned in a seminal discussion of RICO forfeiture law: "[P]roceeds and property affording a source of influence are only subject to forfeiture to the extent they are tainted by the racketeering activity." *United States v. Angiulo*, 897 F.2d 1169, 1212 (1st Cir. 1990).[3]

---

[2] The reason for the initial hesitation stems from the fact that *Honeycutt* arose in the context of the Comprehensive Forfeiture Act of 1984, 21 U.S.C. § 853(a), which mandates the forfeiture of property constituting the proceeds of, or derived from, certain enumerated drug crimes.

[3] At sentencing, the court granted the government a 90-day extension to file a motion seeking restitution pursuant to 18 U.S.C. § 3664(d)(5). On September 26, 2017, the government filed a motion for restitution in the amount of $73.7 million. The court notes, as a threshold matter, that an order of restitution does not affect a forfeiture calculation. Generally speaking, a defendant is not entitled to have the value of forfeited property deducted from any restitution owed to victims of crimes for which he is responsible. *See United States v. Mei Juan Zhang*, 789 F.3d 214, 218 (1st Cir. 2015) (joining a unanimous holding among the federal circuit courts that restitution and forfeiture are not impermissible double penalties and that a district court is "without authority to offset the restitution . . . owed by the amount seized [in forfeiture]"). This result flows from the language of the

The government now seeks from Cadden, at a minimum, $13,203,110 in forfeitable assets,[4] an amount that it describes as "the proceeds of the offense that the defendant obtained — directly or indirectly," between March 26, 2010 through October 31, 2012, when NECC ceased operations.[5] This time period, which is derived from government Trial Exhibits 1648-1652, was identified by the court at sentencing as the appropriate time frame for purposes of calculating victim loss under U.S.S.G. § 2B1.1. The court explained that these dates effectively bookended the period during which

---

Mandatory Victim Restitution Act (MVRA), *see* 18 U.S.C. § 3663A(a)(1) (noting that restitution may be ordered "in addition to . . . any other penalty authorized by law"). *See also United States v. Navarrete*, 667 F.3d 886, 888 (7th Cir. 2012) (Posner, J.) (noting that forfeiture and restitution are cumulative punishments designed to "result[] in a form of punitive damages piled on top of the other penalties for the defendant's crime, such as imprisonment"). The court will address the government's motion for restitution in a separate order after defense counsel has been given an opportunity to respond to the government's restitution request.

[4] The government's position with respect to the amount of the forfeiture has evolved over time from an initial demand of $132,800,000, *see* Dkt #1110, thereafter revised to $75,569,529, *see* Dkt #1167, and finally to the current amount.

[5] The court does not agree with the government's suggestion that that the forfeiture amount *could* be based on the "gross proceeds of the RICO offense during the time period" in question, that is, $75,569,529. *See* Dkt # 1167. Attributing the entire gross proceeds of the RICO enterprise to Cadden, who was but one member of the alleged conspiracy (albeit an important one), would run contrary to the Supreme Court's guidance in *Honeycutt* that "forfeiture . . . is [to be] limited to property the defendant himself actually acquired as the result of the crime." 137 S. Ct. at 1635.

NECC transmogrified from a legitimate compounding business into a mail fraud racketeering enterprise.

The flaw in the government's latest forfeiture calculation is that it lumps Barry Cadden's earnings from NECC with dividends paid to his wife, Lisa Cadden, who owned 17.5 percent of NECC's stock.[6] The government argues that because of the spousal relationship, Barry Cadden had the "indirect" benefit of his wife's earnings from NECC. While this is most likely true, the law has long since abandoned the ancient common-law doctrine of coverture, under which the legal rights and property of a married woman (a *feme covert*) [7] were subsumed to those of her husband. Even more to the point, the government's effort to reach the $5,657,609 paid out to Lisa Cadden, who has not been accused, much less convicted, of any crime, falls astray of the First Circuit's admonition that "[f]orfeiture is an *in personam* criminal remedy, targeted primarily at the defendant who committed the criminal offense," United States v. Saccoccia, 354 F.3d 9, 15 (1st Cir. 2003), as well as the Supreme Court's teaching in *Honeycutt.*

---

[6] Evidence at trial established that Lisa Cadden (with her husband Barry) was one of the founders of NECC, although she gave up involvement in the day-to-day operations of the company to raise a family.

[7] *See* 1 William Blackstone, Commentaries on the Law of England *430 (1766) (noting that under this doctrine, the husband was the one "under whose wing, protection, and cover, she [the married woman] performs every thing").

4

Consistent with the above discussion, the court is of the view that the correct forfeiture figure is the total amount of NECC proceeds that were paid to Barry Cadden personally during the life of the racketeering enterprise, that is, from March 26, 2010 to October 31, 2012. That figure is $7,545,501.[8]

ORDER

For the foregoing reasons, the court <u>ORDERS</u> Barry Cadden to forfeit assets in the amount of $7,545,501. The government is directed to file, within 10 days of this order, a revised proposed order of forfeiture consistent with this decision.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[8] Cadden argues that the court should use for forfeiture purposes the amount it calculated as victim loss at sentencing ($1,427,000), which represents the amount of money that NECC earned from shipments of potentially contaminated or misbranded drugs. Cadden notes that the court determined "that those are the shipments that the government proved, by a preponderance, constituted racketeering activity," and by extension, the "loss amount of $1,427,000" is equal to NECC's gain from the racketeering activity. *See* Dkt #1185 at 8. This argument is true insofar as it goes, but it confuses loss for purposes of the sentencing guidelines, which focuses on loss to victims, with criminal forfeiture, which is aimed at a defendant's ill-begotten gains from criminal activity.