IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2024 JUL 12 PM 12: 05

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES OF AMERICA,
    Plaintiff

vs

BARRY CADDEN,
    Defendant

CASE NO.

MOTION SEEKING A TWO-LEVEL REDUCTION PURSUANT TO AMENDMENT 821

Now comes the Defendant, Barry Cadden, acting pro se requesting the Court to consider a reduction in sentence pursuant to 18 USC §3582(c)(2) and USSG §1B1.10. Under Amendment 821 of the USSG, made retroactive by the Sentencing Commission, (see USSG §1B1.10(d)(Nov. 2023) the Guidelines applicable range would be lowered. Pursuant to USSG §1B1.10(e)(2), any order reducing the Defendant's term of imprisonment under Amendment 821 is effective as long as the date of the court's order is February 1, 2024 or later.

THE AMENDED GUIDELINES

Amendment 821 to the Guidelines went into effect on November 1, 2023 and applies retroactively. The Amendment made "targeted changes" to reduce recommended guidelinesranges for offenders with zero criminal history points under the Guidelines.

Part B of the Amendment created a new Chapter Four at guidelines at §4C1.1 (Adjusted for Certain Zero-Point Offenders). The new §4C1.1 provides a decrease of two levels from the offense level determined under Chapters Two and Three for the offenders who did not receive any criminal history points under Chapter Four, Part A, and whose instant offense did not involve specific aggravating factors. See USSG §4C1.1(a); Supplement to Appendix C, Reason for Amendment.

The Commission explained the reasons for the Amendment as follows: "In establishing new §4C1.1, the Commission was informed by its studies of recidivism among federal offenders, as well as other extensive data analyses of offenders with no criminal history points, and public comment...Recidivism data by the Commission shows...that offenders with zero criminal history points have considerably lower recidivism rates than other offenders, including offenders with one criminal history point. See U.S. Sent'g Comm'n Recidivism of Federal Offenders Released in 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released2010. Among other findings, the report concluded that 'zero-point offenders' were less likely to be rearrested than 'one point' offenders (26.8% compared to 42.3%), the largest variation of any comparison of offenders within the same Criminal History Category." See USSG App C, Amendment 821, Reason for Amendment.

Explaining the rationale for making the changes to the criminal history rules retroactive, the Commission wrote, "The purpose of these targeted amendments is to balance the Commission's mission of implementing data-driven sentencing policies with its duty to craft penalties that reflect the statutory purposes

2

of sentencing and to reflect 'advancement in knowledge of human behavior as it relates to the criminal justice process.' See 28 USC §991(b). The Commission determined that the policy reasons underlying the prospective application of the amendment apply with equal force to individuals who are already sentenced." See USSG App C, Amendment 825, Reasons for Amendment.

"The Commission further determined that the changes made by Part B, Subpart 1 reflect its statutory mission to provide for penalties that are 'sufficient, but not greater than necessary' by recognizing that individuals with zero criminal history points have considerably lower recidivism rates than other sentenced individuals, as well as the fact that courts generally depart and vary more often in cases involving individuals with zero criminal history points as compared with other individuals." Id.

To determine the extent of a retroactive sentencing reduction under §3582(c)(2) for an eligible defendant, a court "shall consider the factors set forth in 18 USC §3553(a)" as well as "public safety consideration[s]" (including "the nature and seriousness of the danger to any person or the community that may be posed by a reduction") and the defendant's "post-sentencing conduct." USSG §1B1.10, comment. (n.1(B)). A defendant's sentence can be reduced to the minimum of the new, amended Guideline range. See USSG §1B1.10(b)(2)(A).

## FACTORS AFFECTING ELIGIBILITY

Given the fact that the USSC voted to make criminal history amendments retroactive, the Defendant believes he is entitled to a two-level reduction making it an extraordinary and compelling reason for a sentence reduction. There are a number of factors that can exclude a defendant from eligibility. These factors include:

1) He had no adjustment under USSG 3A1.3 (Terrorism),

2) Did not use violence or credible threats of violence in connection, with the offenses

3) The offense did not result in death or serious bodily injury,

4) The offense is not sex related,

5) The Defendant did not personally cause substantial financial harship,

6) No gun was involved in connection with the offense,

7) The offense did not involve individual rights under USSG 2H1.1,

8) The offense had no adjustment under USSG 3A1.1 for a hate crime or vulnerable victim offUSSG 3A1.5 for serious human rights offense, and

9) The offense had no adjustment under USSG 3B1.1 for role in the offense and was not engaged in 21 USC 848 - continuing criminal enterprise.

The Defendant is not subject to any of these exemptions, and taking away the two levels will lower his criminal history category. That in turn reduces the Guidelines Range and will lead to a lower sentence.

4

REQUEST FOR APPOINTMENT OF COUNSEL

In any situation where new laws stemming from prior laws and new evidence or facts have to be marshaled and new arguments have to be made in aid of the court's sentencing decision, the Sixth Amendment requires the assistance of counsel, see Mempa v. Rhay, 389 US 128 (1967). In Mempa, the Supreme Court held that the right to counsel attaches to any stage of criminal proceeding where substantial rights of the defendant may be affected, including hearings. To the extent such recommendations are influential in determining the resulting sentence, the necessity for aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances, and in general aiding and assisting the Petitioner to present his case is apparent. District Courts have discretion to decide whether to appoint counsel at any stage of the proceedings pursuant to the Criminal Justice Act, Title 18 USC §§ 3006A(a)(1) and (c), also other statutes.

On April 27, 2023, the Commission submitted to the Congress amendments to the sentencing guidelines, policy statements official commentary, and statutory index, which became effective November 1, 2023. Parts A and B Subpart 1 of Amendment 821 (Amendment 8 of the amendments submitted to Congress on April 27, 2023) pertaining to criminal history, have the effect of lowering guideline ranges for certain defendants. The Commission has now promulgated an amendment to include Parts A and B, Subpart 1 of Amendment 821 in the listing in §1B1.10(d) as an amendment also provides a special instruction requiring that any order granting sentence reductions based on Part A or Part B, Subpart 1 of Amendment 821 shall not take effect until February 1, 2024, or later, and includes commentary explaining and clarifying this special instruction.

Defense counsel is necessary to aid in arguing Petitioner claims and also calculating the revised guideline range and marshaling the facts and evidence that pertain to these arguments and the applicable §3553(a) factors. Counsel is needed to defend against any of the government allegations that hinder Petitioner's ability to gain relief on these areguements presented in his motion for a two-level reduction.

The appointment of counsel is needed to assist the Petitioner in presenting his motion to this court, to properly marshal new fact-based arguments to utilize the United States Sentencing Commission's recent significant changes to the guidelines regarding retroactive application of Part A and B, Subpart 1 of Amendment 821 (Amendment B of the amendments submitted to Congress on April 27, 2023, pertaining to criminal history). Thus, the effective data of this amendment is November 1, 2023. Potential losses of legal rights and prejudice take on increased significance when Petitioner's legal arguments are not heard by this Honorable Court or counsel isn't appointed to represent Petitioner to present those issues to this Court for correction. Since the government cannot negotiate directly with a defendant, appointment of counsel is warranted in the Petitioner's case. See <u>Italkbert v. Michigan</u>, 545 US 605, 623 ("No one questions that the appointment of counsel at state or government expense would be more efficient and helpful not only to defendants, but also to the courts.").

Indigent defendants seeking relief may petition the court to appoint counsel to represent them. Courts may exercise their broad discretion to appoint counsel when the defendant presents a non-frivolous claim and if the appointment of counsel will benefit the defendant and the court. Many circuits require a

finding by the court that the defendant's claim is plausible. In determining the propriety of appointing counsel, circuit courts consider whether there are special circumstances that merit appointment, such as the legal and factual issues involved.

The Defendant was originally sentenced to 108 months which was later enhanced by the court to 174 months. See Exhibit 1. He is FSA eligible (see Exhibit 2) and for purposes of this motion he has **zero** criminal history points. His sentence is well above the mandatory minimum due to the numerous enhancements that were applied. See Exhibit 3. Furthermore, the PSR establishes how his offenses are all fraud related, i.e., no violence. Given everything that's stated, the Petitioner believes he is entitled to a significant sentence reduction.

July 8, 2024

Submitted by:

Barry Cadden